**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
MUNISH CHADHA and
CERNO TECHNOLOGIES PVT. LTD.,

                              Plaintiffs,

              -against-

SANJAY CHADHA,
SANTUSHT BHATIA,
TECH MATRIX INFOSOLUTIONS, INC., and
CERNO TECHNOLOGIES, INC.,

                           Defendants.
------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 16-3739 (ENV) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      PRELIMINARY STATEMENT

      Plaintiffs Munish Chadha ("Munish") and Cerno Technologies Pvt. Ltd. ("CT India")

(collectively, "Plaintiffs") commenced this action against Defendants Sanjay Chadha ("Sanjay"),

Santusht Bhatai ("Santusht"), Tech Matrix Infosolutions, Inc. ("Tech Matrix"), and Cerno

Technologies, Inc. ("CT, Inc.") (collectively, "Defendants") on July 6, 2016 alleging violations

of the Defend Trade Secrets Act, 18. U.S.C. § 1836 *et seq.* ("DTSA"), the Copyright Act of

1976, 17 U.S.C. § 101 *et seq.* ("Copyright Act"), and state law claims for breach of contract,

tortious interference of contracts, fraud, breach of fiduciary duty, breach of duty of loyalty,

conversion, unjust enrichment, and account stated. *See generally* Complaint [DE 1].

      Defendants' counsel entered an appearance in this action on July 29, 2016, *see* DE 15,

and subsequently filed an Answer, *see* DE 18.  Defendants actively defended this action until

February 5, 2018, when the Court granted the motion of the Certilman Balin law firm to be

relieved as counsel of record for the individual Defendants and the corporate Defendants.  The

Court gave the corporate Defendants 30 days to retain new counsel since a corporation can only proceed by counsel.  The individual Defendants were given 30 days to notify the Court whether they were retaining counsel or proceeding *pro se*.  *See* DE 73.

On February 13, 2018, Plaintiffs filed an Amended Complaint, pursuant to Judge Bianco's February 2, 2018 Order granting Plaintiffs leave to amend to add a claim for copyright infringement.  *See* Amended Complaint ("Am. Compl.") [DE 75].  Notwithstanding their prior participation in the action, Defendants failed to answer or otherwise respond to the Amended Complaint.  Likewise, Defendants never responded to Judge Bianco's February 5, 2018 Order regarding retention of new counsel.  On April 30, 2019, Plaintiffs filed a Request for a Certificate of Default with the Clerk of the Court.  *See* DE 86.  The Clerk of the Court entered defaults against all of the Defendants on May 10, 2018, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 55(a).  *See* DE 87.  On October 1, 2018, Plaintiffs filed a motion for entry of default judgment and permanent injunctive relief against the Defendants.  *See* 95.

Judge Bianco granted in part and denied in part Plaintiffs' motion for default judgment on December 18, 2018, solely as to liability.  *See* DE 100.  He then referred the matter to this Court for the calculation of damages and the request for a permanent injunction.  *Id.*  Approximately two months later, the law firm of Altman & Company, P.C., by Steven Altman, Esq., filed a Notice of Appearance on behalf of all Defendants.  DE 104.  Defendants' new counsel filed a letter motion on February 14, 2019, requesting to be heard on Plaintiffs' pending motion as to the issue of damages only.  *See* DE 105, 109.  During the March 22, 2019 Status Conference, the Court established a new briefing schedule for all parties, limited to the issue of damages and permanent injunctive relief.  *See* DE 110.  As a result, Plaintiffs re-filed their motion for default

judgment and permanent injunctive relief, to which Defendants filed opposition. *See* Plaintiffs'

Motion for Default Judgment and Entry of Permanent Injunction, Motion to Damages and

Attorneys' Fees ("Pls.' Mem.") [DE 113]; Defendants' Memorandum of Law in Opposition to

Plaintiffs' Claim For Damages ("Defs.' Opp'n") [DE 111]; Plaintiffs' Reply Memorandum of

Law in Further Support of Motion for Default Judgment and Request for Damages and

Attorney's Fees ("Pls.' Reply") [DE 114]; Defendants' Response to the Documents Submitted

by Plaintiffs in Reply on Their Claim for Damages and Attorneys' Fees ("Defs.' Sur-Reply")

[DE 117].

On June 3, 2019, Judge Vitaliano[1] referred Plaintiffs' motion to this Court for a Report

and Recommendation, pursuant to 28 U.S.C. § 636(b). *See* June 3, 2019 Electronic Order. For

the reasons which follow, this Court respectfully recommends to Judge Vitaliano that Plaintiffs'

motion be GRANTED in part and DENIED in part.

II.    **BACKGROUND**

In light of the fact that Judge Bianco previously found the Defendants in default and, as a

result, liable for damages, this Court is limiting its discussion of the facts to those necessary to a

determination of damages.

A.    **Amended Complaint**

The following facts are taken from the Amended Complaint and are assumed to be true

for purposes of this motion.

*1.    2012 Business Agreement with Sanjay Chadha*

In 2012, Munish, a citizen of India, entered into what appears to be a verbal business

agreement with his cousin, Sanjay, a citizen of New York, to form a business known as Tech

---

[1]    This case had been reassigned to District Judge Vitaliano on March 8, 2019.

Matrix (the "2012 Agreement").  *See* Am. Compl. ¶¶ 12-13.  Tech Matrix, a corporation organized and existing under the laws of the State of New York, markets and sells "proprietary software, including software called Yoda Care and Yoda Shield, to provide paid-for computer services" in the United States, and also markets and sells technical repair services for software related issues.  *Id*. ¶ 16; *see also* Declaration of Munish Chadha ("Chadha Decl.") [DE 115-1] ¶ 8, annexed to the Declaration of Kalpana Nagampallli in Support of Plaintiff's Motion for Damages and Attorney's Fees ("Nagampalli Decl.") [DE 115-1].  Tech Matrix was allegedly modeled after a business Munish owned and operated in India at the time.  Am. Compl. ¶ 12.  The proprietary software sold by Tech Matrix was provided by Munish from his business in India.  *Id*. ¶ 13.  Under the terms of the 2012 Agreement, Munish provided the business plan, trade secrets, propriety business information, and capital to organize and operate Tech Matrix.  *Id*.  In exchange, Sanjay managed the day-to-day operations of Tech Matrix.  *Id*.  Munish and Sanjay further agreed that the two were to serve as co-directors of Tech Matrix, sharing equally in the ownership and profits of the business.  *Id*.

Sometime toward the end of 2013, Tech Matrix's bookkeeper advised Munish that Sanjay was transferring the profits earned by Tech Matrix exclusively to himself -- instead of evenly distributing them between Munish and Sanjay in accordance with the Agreement.  *Id*. ¶ 18.  As Munish was attempting to recoup his share of Tech Matrix's profits, he discovered that Sanjay had made himself the sole principal and owner of Tech Matrix when he incorporated the business.  *Id*. ¶¶ 18, 19.  To date, Sanjay has allegedly failed to share with Munish any profits earned by Tech Matrix.  *Id*. ¶ 20.

### 2.    *2014 Business Agreement with Santusht Bhatia*

In February 2014, Munish, along with non-party Guarav Sharma ("Sharma") and Santusht, all citizens of India, entered into a verbal agreement to form a business known as Cerno Technologies Pvt. Ltd. ("CT India") (the "2014 Agreement"). *Id*. ¶ 21. CT India, a private limited company organized and existing under the laws of India, is "an information technology company [that] develop[s] mobile applications and legal customer relationship management applications." *Id*. Under the terms of the 2014 Agreement, Munish, Sharma, and Santusht served as the directors and shareholders of CT India. *See id*. The three agreed that Munish would own 50% of CT India's shares, Sharma would own 25% of the shares, and Santusht would own the remaining 25%. *Id.* ¶ 23. Santusht developed CT India's software applications based on ideas conceived from the three directors, *id*. ¶ 22, while Munish provided the capital for the company's operations, *id*. ¶¶ 22, 24. Although not a shareholder or director of CT India, Sanjay was hired to market CT India's software applications. *Id.* ¶ 22.

Sometime in 2014, while serving as a director and shareholder of CT India, Santusht developed two software applications referred to as CT Live and CT Legal. *Id*. ¶ 25. The source codes for CT Live and CT Legal were in the sole possession of Santusht, who also had access to all of CT India's management, administrative, business, and proprietary information. *Id*. ¶¶ 31-32. Notwithstanding never having had access to source codes, CT India, as the author and owner of the source codes of CT Legal and CT Live, allegedly possesses a foreign copyright in India for the source codes. *Id.* ¶¶ 106-107.[2]

---

[2]     As the District Court previously entered default judgment as to liability, the Court is bound by the allegations in Plaintiffs' Amended Complaint and must accept them as true. Implicit in the entry of default judgment is Judge Bianco's assessment that the allegations sufficiently state a claim for relief.

In June 2014, Sanjay and Santusht allegedly colluded to launch CT Live and CT Legal internationally through another company, Cerno Technologies, Inc. ("CT, Inc."). *Id.* ¶¶ 28, 45. CT, Inc., a corporation organized and existing under the laws of the State of New York, was formed by Sanjay who serves as the sole shareholder and director of the company. *Id.* ¶ 27. In January 2015, while Munish and Sharma protested the launch of CT Live and CT Legal, Santusht ceased working for CT India and began working for CT, Inc. out of an office which CT, Inc. established in India. *Id.* ¶ 29. Not only did Santusht take the source codes for CT Live and CT Legal with him to CT, Inc., *see id.* ¶ 32, but he also allegedly "coerced and/or influenced all the Indian employees of [CT India]" to begin working for CT, Inc., *id.* ¶ 30. CT, Inc. has since launched and marketed CT Live and CT Legal without the consent of CT India under the name Lex Rex. *Id.* ¶ 45. To date, none of the profits from the sale of Lex Rex (*i.e.,* CT Live and CT Legal) have allegedly been shared with CT India, *see id.* ¶ 46; nor have the source codes for CT Live and CT Legal been returned to CT India. *Id.* ¶ 34.

### 3.    *2015 Settlement Agreement*

Based on the foregoing conduct, Munish filed a criminal complaint against Defendants in India in September 2015. *Id.* ¶ 37. In December 2015, Munish and Defendants executed a settlement agreement in which Defendants agreed to remit to Munish $111,000, in six installments of $18,500, in exchange for Munish agreeing to relinquish his interest and shares in CT India and withdrawing the criminal complaint against Defendants (the "2015 Settlement Agreement"). *Id.* ¶¶ 39-40. In accordance with the 2015 Settlement Agreement, Munish ceased pursuing the criminal complaint, and, as a result, the criminal investigation was closed. *Id.* ¶ 43. However, Defendants tendered only one payment of $18,500, and failed to tender the remaining $92,500 owed to Munish under the terms of the 2015 Settlement Agreement. *Id.* ¶ 43.

### B.    Procedural History

Plaintiffs commenced the instant action against Defendants on July 6, 2016, asserting claims for:  (1) misappropriation of trade secrets in violation of DTSA; (2) breach of contract; (3) fraud; (4) breach of fiduciary duty; (5) breach of duty of loyalty; (6) conversion; (7) tortious interference of contracts; (6) unjust enrichment; and (7) an account stated.  DE 1.  On July 29, 2016 and August 12, 2016, Defendants' counsel entered an appearance in this action and filed an Answer [DE 18].  The parties exchanged limited discovery, after which Plaintiff sought leave to file an Amended Complaint to add claims for copyright infringement and breach of contract arising from the 2015 Settlement Agreement.  *See* DE 31, 64.  On February 22, 2017, the Court set a briefing scheduled for Plaintiff's motion seeking leave to file an Amended Complaint.  *See* DE 34.  Prior to the parties fully briefing the motion, Plaintiff filed a different motion on August 2, 2017 to enforce the 2015 Settlement Agreement.  *See* DE 51.  Defendants opposed that motion.  *See* DE 54.

On September 19, 2017, the Court denied Plaintiff's motion to enforce the 2015 Settlement Agreement.  *See* DE 59.  Thereafter, the parties resumed their briefing and filed the motion seeking leave to file an Amended Complaint on November 20, 2017.  *See* DE 31, 64-65, 67.  On February 5, 2018, the Court granted Plaintiffs leave to file an Amended Complaint to assert a claim for copyright infringement, but denied Plaintiffs' motion as to the claim for breach of contract arising from the 2015 Settlement Agreement.  *See* DE 73.  That same day, the Court permitted Defendants' counsel to withdraw as counsel of record based on Defendants' failure to respond to counsel's attempts to contact them.  *See* DE 71, 73.  The individual Defendants Sanjay and Santusht were directed to advise the Court within 30 days whether they intended to retain counsel or proceed *pro se*.  DE 73.  The corporate Defendants Tech Matrix and CT, Inc.

were directed to advise the Court within 30 days of their new counsel since the corporations

could not proceed on a *pro se* basis. *See id*. Neither the individual nor the corporate Defendants

complied with the Court's Order.

On February 13, 2018, Plaintiffs filed an Amended Complaint. *See* DE 75. Defendants

failed to answer or otherwise respond to the Amended Complaint. Plaintiffs filed a Request for a

Certificate of Default with the Clerk of the Court on April 30, 2019. DE 86. On May 10, 2018,

the Clerk of the Court entered a default against Defendants, pursuant to FED. R. CIV. P. 55(a).

DE 87. On October 1, 2018, Plaintiffs filed a motion for default judgment and permanent

injunctive relief against the Defendants. *See* DE 95. On December 18, 2018, Judge Bianco

found that Plaintiffs had properly effected service of the Amended Complaint on Defendants and

granted Plaintiffs' motion for default judgment as to liability only. *See* DE 100. Judge Bianco

also advised Plaintiffs that in order to obtain damages related to a default, they must "present

admissible evidentiary proof of [their] alleged damages, unless the claimed amount is liquidated

or susceptible to mathematical calculation." *Id*. (quoting *In re Suprema Specialties, Inc*., 330

B.R. 40, 54 (S.D.N.Y. 2005)).

Judge Bianco referred the remainder of the motion to this Court for a Report and

Recommendation on the issue of damages and injunctive relief. *Id*. No opposition to Plaintiffs'

motion was filed. However, approximately two months later, Defendants obtained new counsel,

who appeared in this action on February 14, 2019 and requested to be heard on Plaintiffs'

pending motion as to the issue of damages only. *See* DE 105. In light of this appearance, the

Court established a new briefing schedule "on the amount of damages to which Plaintiffs assert

they are entitled." DE 110. The Court reminded Plaintiffs again that they were required "to

attach all underlying documentation for the damages claims as exhibits to [their] papers." *Id*.

The motion for default judgment and permanent injunctive relief was re-filed on May 31, 2019.[3]  *See* DE 113-115.  The motion seeks damages, attorneys' fees and costs, prejudgment and post judgment interest and permanent injunctive relief.  Judge Vitaliano referred Plaintiffs' re-filed motion to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b).  *See* June 3, 2019 Electronic Order.

## IV.    RELIEF REQUESTED

### A.    Compensatory Damages[4]

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability."  *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.,* 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  Because a default judgment has already been entered, the issue of liability on the claims raised in the Amended Complaint has been established.  However, "while a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Int'l,* 655 F. Supp. 2d at 189(citation omitted).  "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are

---

[3]    On June 3, 2019, the Court granted Defendants leave to submit a limited sur-reply.  *See* June 3, 2019 Electronic Order.

[4]    The Court notes that Plaintiffs' submissions in support of the instant motion are, at times, unclear, inconsistent, and lacking sufficient detail.  In several instances, Plaintiffs failed to adequately explain and/or support their theories and calculations of damages with legal authority.  The Court has endeavored to decipher Plaintiffs' submissions to the extent possible to identify and address all of the damages requested.  However, the Court has not addressed any theory of damages not explicitly and intelligibly stated.

sought." *Overcash v. United Abstract Grp., Inc.,* 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). The burden is on plaintiff to establish entitlement to recovery. *See Bravado Int'l,* 655 F. Supp. 2d at 189 (citation omitted).

While a court must "take the necessary steps to establish damages with reasonable certainty," *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997), a court need not hold a hearing "as long as it ensure[s] that there [is] a basis for the damages specified in a default judgment." *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 Fed. App'x. 44, 45 (2d Cir. 2015) (observing that a district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers"). "If a plaintiff fails to demonstrate its damages to a reasonable certainty, then the court should decline to award any damages, even where liability has been established through default." *Culajay v. P.M.F. Steel Corp.*, No. 16-CV-6597, 2018 WL 1936457, at *2 (Feb. 21, 2018) (citation and internal quotation marks omitted), *adopted by* No. 16-CV-6597, 2018 WL 1796222 (E.D.N.Y. Mar. 20, 2018).

Plaintiffs' motion seeks $855,000[5] in damages, $131,701.50 in attorneys' fees, and $967[6] in costs. Pls.' Mem. at 4-5; Chadha Decl. ¶ 46. Specifically, Plaintiffs seek: (1) statutory

---

[5] Plaintiffs' damages chart reflects Plaintiffs' position that they are entitled to $885,500 in damages; however, the sum of the monetary damages listed in that same chart adds up to $855,000, not $885,500. *See* Pls.' Mem. at 4-5. This is one of several inconsistencies in Plaintiffs' submissions.

[6] Plaintiffs' Memorandum of Law states that Plaintiffs are entitled to $1,250 in costs; however, the Declaration of Nagampalli states that Plaintiffs' are entitled to $967 in costs. *See* Nagampalli Decl. ¶ 9. The Court relies here on the Nagampalli sworn declaration.

damages in the amount of $150,000, pursuant to the Copyright Act; (2) statutory damages in the amount of $150,000, pursuant to the DTSA; (3) compensatory damages in the amount of $330,000 in connection with the state law claims arising from the 2012 Agreement; (4) compensatory damages in the amount of $100,000 in connection with the breach of contract and conversion claims arising from the 2014 Agreement; (5) compensatory damages in the amount of $25,000 arising from the 2015 Agreement; and (6) punitive damages in the amount of $100,000 in connection with the fraud claims. *See generally* Pls.' Mem. At the outset, the Court points out that Plaintiffs initially failed to provide any admissible documentary evidence in support of the requested damages and attorneys' fees and costs. After Defendants pointed out this deficiency, Plaintiffs submitted the Declaration of Munish[7] in support of their claim for compensatory damages as well as the Nagampalli Attorney Declaration, with contemporaneous time/billing records annexed to the declaration, in support of their claim for attorneys' fees and costs.[8] *See* Chadha Decl.; Nagampalli Decl., Ex. C. Munish's sworn declaration attests to the facts underlying the Amended Complaint and the compensatory damages sought in connection with the 2012 Agreement, 2014 Agreement, and 2015 Settlement Agreement. *See generally* Chadha Decl.

---

[7] Defendants assert that Munish's signature page of his declaration is suspicious in appearance, and, accordingly, Defendants request that the declaration be stricken. *See* Defs.' Opp'n at 2-3. Defendants contend that the declarant must submit a supplemental declaration attesting to the execution of the initial declaration before the Court may consider the initial declaration. *Id.* Defendants fail to provide any legal authority in support of such a request. In any event, the Court is not considering the declaration because, as discussed, *infra*, it does not adequately provide a basis for the damages requested.

[8] Although it is "plainly improper to submit on reply evidentiary information which was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden," the Court cured any asserted prejudice to Defendants by permitting them to file a sur-reply. *See Perez v. Manna 2nd Ave. LLC*, No. 15-CV-655, 2016 WL 7489040, at *4 (S.D.N.Y. Dec. 28, 2016) (citing *Church & Dwight Co. v. Kaloti Enterprises of Michigan, LLC.,* No. 07-CV-612, 2011 WL 4529605, at *1 n.1 (E.D.N.Y. Sept. 28, 2011)).

As discussed below, Plaintiffs are entitled only to the compensatory damages sought in connection with 2014 Agreement.  Since the only damages the Court recommends awarding to Plaintiffs are based on a claim for breach of contract for a sum certain, the Court finds that no evidentiary hearing is necessary.  *See LG Capital Funding, LLC v. Ubiquity, Inc.*, No. 16-CV-3102, 2017 WL 3173016, at *4 (E.D.N.Y. May 12, 2017) (concluding no evidentiary hearing necessary to determine damages after granting motion for default judgment in a sum certain breach of contract action).  With these standards in mind, the Court will address the damages sought by Plaintiffs in turn.

### 1.    Copyright Infringement

CT India seeks statutory damages in the maximum amount of $150,000 for what it characterizes as Sanjay, Santusht, and CT, Inc.'s "willful and deliberate" infringement of CT India's copyrighted software, CT Live and CT Legal, under the name Lex Rex.  *See* Am. Compl. ¶¶ 102-115; Pls.' Mem. at 9-13.  In seeking statutory damages, CT India acknowledged that it is unable to quantify the profits realized from Sanjay, Santusht, and CT, Inc.'s infringement due to their default and the corporation does not proffer evidence of damages in any other form.  *See* Pls.' Mem. at 9-10.

The Copyright Act provides that "[a] copyright owner may elect ... to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action[.]"  17 U.S.C. § 504(c)(1); *see also N.A.S. Import Corp. v. Chenson Enter., Inc.,* 968 F.2d 250, 252 (2d Cir. 1992).  Section 504(c)(1) of the Copyright Act permits a court to award statutory damages "with respect to any one work ... in a sum of not less than $750 or more than $30,000 as the court considers just."  *Id*.  If a court finds willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than

12

$150,000." *Id*. § 504(c)(2). Within these statutory limits, the Court has broad discretion in determining the appropriate statutory damages award. *See Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.,* 807 F.2d 1110, 1116 (2d Cir. 1986).

No proof of actual damages or, in fact, any damages, is necessary for the award of statutory damages. *See All-Star Mktg. Grp., LLC v. Media Brands Co*., 775 F. Supp. 2d 613, 626 (S.D.N.Y. 2011) (quoting *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001); *see also UMG Recordings, Inc. v. Griffin,* No. 08–CV–00274, 2008 WL 4974856 at *2 (N.D.N.Y. Nov. 24, 2008) ("[A] plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits.") (quotations omitted). Indeed, "[t]he award of statutory damages is especially fitting in the default judgment context where Plaintiffs are without the benefit of any disclosure by the infringer, leaving damages uncertain." *Tu v. TAD Sys. Tech. Inc.,* No. 08-CV-3822, 2009 WL 2905780, at *2 (E.D.N.Y. Sept. 10, 2009) (citation omitted).

This case involves copyrighted works created and published in India. India is a contracting party/signatory to the Berne Convention. *See* Berne Convention for the Protection of Literary and Artistic Works art. 3, Sept. 9, 1886–Nov. 16, 1988, S. Treaty Doc. No. 99–27, 1161 U.N.T.S. 30 (entered into force Mar. 1, 1989) ("Berne Convention"); *see also* Contracting Parties, Berne Convention, WORLD INTELLECTUAL PROPERTY ORGANIZATION, http://www.wipo.int/treaties/en/Show Results.jsp?lang=en&treaty_id=15 (last visited February 28, 2020). The Berne Convention "does not require the owner of a foreign copyright to register in the United States before seeking redress for infringement of works originating in foreign nations . . . that are signatories to the convention." *Super Express USA Publ'g Corp. v. Spring Publ'g Corp.* ("*Super Express USA Publ'g Corp. I"),* No. 13-CV-2814, 2017 WL

1274058, at *9 (E.D.N.Y. Mar. 24, 2017) (quoting *Sadhu Singh Hamdad Trust v. Ajit Newspaper Advert. Mktg. & Commc'ns, Inc.*, 503 F. Supp. 2d 577, 584 (E.D.N.Y. 2007)).  Although the Berne Convention spares owners of foreign copyrights from having to register a copyright in the United States before bringing suit, failing to register does preclude certain remedies.

Under the Copyright Act "no award of statutory damages or of attorney's fees ... shall be made for ... any infringement of copyright in an unpublished work commenced before the effective date of its registration."  17 U.S.C. § 412.  Therefore, "unregistered foreign copyright holders can bring infringement claims, but they may only seek actual damages."  *Super Express USA Publ'g Corp. v. Spring Publ'g Corp.* ("*Super Express USA Publ'g Corp. II*"), No. 13-CV-2814, 2018 WL 1559764, at *3 (E.D.N.Y. Mar. 30, 2018); *see The Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F. Supp. 2d 159, 164 (S.D.N.Y. 2009) ("[O]ne could bring an infringement suit (although not obtain statutory damages) based on an unregistered foreign Berne Convention work"); *Haddley v. Next Chapter Tech., Inc.,* No. 16-CV-1960, 2017 WL 1483333, at *3, n.6 (D. Minn. Apr. 25, 2017) ("The holder of a foreign copyright does not need to register before filing suit, unless he is seeking statutory damages or attorney fees.") (citations omitted).

Here, it is not alleged that the foreign copyrights at issue have been registered in the United States.  *See* Am. Compl. ¶¶ 102-109.  Having failed to register the foreign copyrights with the U.S. Copyright Office, CT India is not entitled to any statutory damages.  *See* 17 U.S.C. § 412; *Super Express USA Publ'g Corp. II,* 2018 WL 1559764, at *3 ("In declining to register their [foreign] copyrights, Plaintiffs foreclosed the possibility of statutory damages."); *The Football Ass'n*, 633 F. Supp. 2d at 162 ("Section 412 [of the Copyright Act] has no exception excusing foreign works from its mandate: it requires registration to obtain statutory damages for both domestic and foreign works.").

14

Accordingly, the Court respectfully recommends that CT India's request for statutory damages in the amount of $150,000 against Sanjay, Santusht, and CT, Inc. for copyright infringement be DENIED.[9]

### 2.    *Misappropriation of Trade Secrets*

Plaintiffs each seek, without citation to any supporting legal authority, "statutory damages [in the amount] of $150,000" against Sanjay and Tech Matrix for their unlawful distribution of Yoda Care and Yoda Shield, and against Sanjay, Santusht, and CT, Inc., for their unlawful distribution of CT Live and CT Legal.  *See* Pls.' Mem. at 9, 13.

The DTSA allows the Court to award:  (1) "damages for actual loss caused by the misappropriation of the trade secret;" (2) "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss;" or (3) "in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret."  18 U.S.C. § 1836(b)(3)(B). Based on the plain language of the statute, the DTSA does not permit the Court to award statutory damages as a remedy for the misappropriation of a trade secret.  *See id.*  While the DTSA also provides for an award of exemplary damages, this should not be conflated with the

---

[9]         Plaintiff CT India only elected to seek statutory damages for its copyright claim, and thus, the Court need not analyze whether actual damages are appropriate.  *See Getaped, Inc., v. Cangerni,* 188 F. Supp. 2d. 398, 406 (S.D.N.Y. 2002) ("Once a plaintiff elects statutory damages, he or she gives up the right to seek actual damages."); *see also Latin American Music Co. v. Spanish Broadcasting Systems, Inc.,* 866 F. Supp. 780, 782 (S.D.N.Y. 1994) ("Although the election may be made at any time before final judgment is rendered, once a plaintiff elects statutory damages he may no longer seek actual damages"); *Homkow v. Musika Records, Inc.,* No. 04-CV-3587, 2008 WL 508597, at *3 (S.D.N.Y. Feb. 26, 2008) (precluding plaintiff from seeking actual damages prior to final judgment after plaintiff elected to pursue statutory damages in first inquest submission).

"statutory damages" sought by Plaintiffs here.  Exemplary damages are awarded "in an amount not more than 2 times the amount of damages" when the trade secret is willfully and maliciously misappropriated.  18 U.S.C. § 1836(b)(3)(C).  However, there can be no exemplary damages without there first being an award of actual damages, which Plaintiffs did not request.  *See id*. The Court draws the conclusion here that Plaintiffs have conflated the remedies permitted under the Copyright Act -- which provides for statutory damages -- with that of the DTSA, which does not.

Accordingly, the Court respectfully recommends that Plaintiffs' request for statutory damages in the amount of $150,00 against Defendants for their violation of the DTSA be DENIED.[10]

### 3.    *Breach of Contract, Conversion, Fraud, Unjust Enrichment, Breach of Fiduciary Duty, and Account Stated*[11]

#### a.   **Sanjay, Santusht, Tech Matrix, and CT, Inc.**

Plaintiffs seek damages in the amount of $125,000 for Defendants' purported breach of the 2015 Settlement Agreement.  *See* Pls.' Mem. at 15-17.  The Court has twice rejected Plaintiffs' attempts to assert any rights and remedies arising from the 2015 Settlement Agreement.  On September 19, 2017, the Court denied Plaintiffs' motion to enforce the 2015

---

[10]    Plaintiffs also seek "at least $330,000 [for Defendants'] common law misappropriation of trade secrets, withheld profits and distribution."  *See* Pls.' Mem. at 15.  Since Plaintiffs failed to plead any common law claim for misappropriation of trade secrets, they are not entitled to any damages arising from such a claim.  *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318, 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018) ("[A] plaintiff cannot recover damages against a defaulted defendant for claims never alleged in its pleading"); FED. R. CIV. P. 54(c) (A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

[11]    Plaintiffs do not seek damages for any other state law claims pled in the Amended Complaint.

Settlement Agreement. *See* DE 59. Thereafter, on February 5, 2018, the Court denied Plaintiffs leave to amend their Complaint to assert a claim for breach of contract arising from the 2015 Settlement Agreement. *See* DE 73. Consequently, the Amended Complaint does not plead a claim for breach of contract arising from the 2015 Settlement Agreement, and, thus, Plaintiffs are not entitled to damages based on such a claim. *See* FED. R. CIV. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *Joint Stock Co. Channel One Russia Worldwide*, 2018 WL 4760345, at *1 ("[A] plaintiff cannot recover damages against a defaulted defendant for claims never alleged in its pleading").

Accordingly, the Court respectfully recommends that Plaintiffs' request for an award of $125,000 in compensatory damages against Defendants for their purported breach of the 2015 Settlement Agreement be DENIED.

### b. Sanjay and Tech Matrix

Munish seeks $330,00 in damages against Sanjay and Tech Matrix for their failure to distribute 50% of Tech Matrix's profits to Munish in accordance with the 2012 Agreement. *See* Pls.' Mem. at 10. These damages are sought in connection with Munish's claims for breach of contract, fraud, conversion, breach of fiduciary duties, an account stated, and unjust enrichment against Sanjay. *See generally* Chadha Decl. Although Munish seeks damages for the same injury under different legal theories, he is only entitled to a single recovery.[12] *See, e.g., Seifts v.*

---

[12]     **Error! Main Document Only.**Plaintiffs' fraud claim, for example, is barred because it is duplicative of Plaintiffs' breach of contract claim. *RJ Kitchen Assoc. Inc. v. Skalski*, 16-1436, 2019 WL 2436092, at *5 (E.D.N.Y. Feb. 25, 2019) (citing *Feel Better Kids, Inc. v. Kids in Need, Inc.*, No. 06-CV-0023, 2012 WL 4483000, at *9 (E.D.N.Y. Aug. 28, 2012) (internal quotation marks and citation omitted), *report and recommendation adopted by* 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012). Generally, New York law requires that a fraud claim raised in the context of a contract dispute be "sufficiently distinct from the breach of contract claim." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (quoting *Papa's–June Music, Inc. v. McLean*, 921 F.Supp. 1154, 1162 (S.D.N.Y. 1996)).

*Consumer Health Sols. LLC,* 61 F. Supp. 3d 306, 326 (S.D.N.Y. 2014) ("Where a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed.") (citation omitted); *Shamrock Power Sales, LLC v. Scherer*, No. 12-CV-8959, 2016 WL 7647597, at \*14 (S.D.N.Y. Dec. 8, 2016), *report and recommendation adopted*, No. 12-CV-8959, 2017 WL 57855 (S.D.N.Y. Jan. 4, 2017) ("To further award damages here for the same amount granted above would be redundant and excessive.") (citation omitted).  As such, the Court will only evaluate Munish's entitlement to the requested damages under his breach of contract claim.

Under New York law,[13] the party injured by a breach of contract may generally seek "two distinct categories of damages:"  (1) general or market damages, and (2) special or consequential damages.  *Schonfeld v. Hilliard,* 218 F.3d 164, 175 (2d Cir. 2000) (citation omitted).  General damages compensate the injured party for the "value of the very performance promised."  *Id*. (citation omitted).  "A party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms."  *Merrill Lynch,* 500 F.3d at 185 (citing *Boyce v. Soundview Tech. Grp., Inc.,* 464 F.3d 376, 384 (2d Cir.2006)); *see also Menzel v. List,* 24 N.Y.2d 91, 298 N.Y.S.2d 979, 983, 246

---

With limited exceptions, none of which apply here, a fraud claim will not lie if it arises "out of the same facts as plaintiff's breach of contract claim." *Telecom Int'l Am., Ltd. v. AT & T Corp*., 280 F.3d 175, 196 (2d Cir. 2001).  Here, Plaintiffs' fraud claim arises out of the same facts as the breach of contract claim and as such is duplicative of Plaintiff's breach of contract claim.  See *R.J. Kitchen Associates, Inc.,* 2019 WL 2436092, at \*5.

[13]    Where, as here, the parties do not raise choice-of-law as an issue, "it can be said that they have consented to the application of the forum state's law."  *Mangual v. Pleas*, No. 02-CV-8311, 2005 WL 2179083, at \*2, n.1 (S.D.N.Y. Sept. 8, 2005); *see also Jin Young Chung v. Yoko Sano,* No. 10-CV-2301, 2011 WL 1303292, at \*7 (E.D.N.Y. Feb. 25, 2011), *report and recommendation adopted sub nom.,* No. 10-CV-2301, 2011 WL 1298891 (E.D.N.Y. Mar. 31, 2011) (finding New York law applies where plaintiff "has not taken any position" and the defendant defaulted).  The parties' citation to New York law further serves as "implied consent ... sufficient to establish choice of law."  *Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir. 2000) (internal quotation marks and citations omitted).

N.E.2d 742 (1969).  Unlike general damages, consequential damages "seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach."  *Schonfeld,* 218 F.3d at 176 (citing 3 Dan B. Dobbs, Dobbs Law of Remedies § 12.2(3) (1993)).

Although Munish is silent as to the specific category of damages he seeks, it appears that he is seeking general damages to compensate him for the "value of the very performance promised" (*i.e.,* 50% of the profits earned by Tech Matrix).  According to Munish, $330,000 represents the value of the performance promised.  *See* Pls.' Mem. at 10; Chadha Decl. ¶ 46.  In support of the damages sought, Munish's Declaration purports to attach a "true and correct reproduction of [Tech Matrix's] QuickBooks Ledger showing [his and] Sanjay's withdrawals from [Tech Matrix] in 2013."[14]  Chadha Decl. ¶ 11.  Munish contends the ledger demonstrates that he "withdrew" a total of $10,411.89 from Tech Matrix's business account while Sanjay "withdrew" a total of $175,156.75 from the account, resulting in a net benefit of $165,156.75 being conferred on Sanjay.  *Id*.  Based on this difference, Munish concludes that he "is owed at least $82,500 … from 2013 calendar year" which, if extrapolated over the four years during which Tech Matrix was profitable, would amount to $330,000.  *Id*. ¶¶ 11-13.

As an initial matter, the Court cannot consider the purported ledger in any calculation of damages because Munish failed to attach the ledger to his sworn declaration in support of the instant motion.  *Id*.  Although Munish included the ledger in a prior filing which appears on the docket, *see* DE 75, Ex. A, the ledger was not attached to any signed declaration attesting to its

---

[14]     The 2013 QuickBooks ledger is for the corporate entity named "My Tech Bays, Inc."  *See* Am. Compl. at ¶ 15.  However, according to the allegations in the Amended Complaint, which are deemed admitted for purposes of the instant motion, Tech Matrix was originally incorporated as "My Tech Bays, Inc."  *See id*.

authenticity and accuracy; thus, the ledger is not admissible.  *See* FED. R. EVID. 901(a); *House v. Kent Worldwide Mach. Works, Inc.,* 359 Fed. App'x 206, 207 (2d Cir. 2010) (summary order) ("The Federal Rules of Evidence require that documents be authenticated before they can be admitted into evidence.") (citing FED. R. EVID. 901(a)); *Glassman-Brown v. Pouring Wine, LLC*, No. 14-CV-03763, 2015 WL 5853802, at *3 (S.D.N.Y. Aug. 5, 2015), *report and recommendation adopted in part,* No. 14-CV-3763, 2015 WL 5853807 (S.D.N.Y. Oct. 7, 2015) ("The Federal Rules of Evidence require that an item of evidence must be authenticated and that requirement is satisfied by 'evidence sufficient to support a finding that the item is what the proponent claims it is.' ") (citing FED. R. EVID. 901(a)).  In light of Plaintiffs' failure to submit any admissible supporting documentary proof to substantiate a calculation of damages, the Court cannot award Munish the $330,000 in damages which Plaintiffs seek.  *See Granados v. Gold Coast Tennis, Inc.,* No. 12-CV-4016, 2013 WL 3766582, at *3 (E.D.N.Y. July 16, 2013) ("To obtain damages related to a default judgment, a plaintiff must present admissible evidentiary proof of his alleged damages, unless the claimed amount is liquidated or susceptible to mathematical calculation") (internal quotation marks and citation omitted); *House v. Kent Worldwide Mach. Works, Inc.*, 359 Fed. App'x 206, 207 (2d Cir. 2010) (finding that a damages award must be based on admissible evidence).

Even assuming the ledger was properly before the Court, this ledger reveals nothing more than Tech Matrix's expenditures.  *See* DE 93, Ex. A.  The ledger does not disclose any information regarding Tech Matrix's revenues and/or profits.  *See id*.  Moreover, the amount of damages Munish seeks based on the ledger is completely arbitrary and lacking in foundation. Munish has failed to explain how he arrived at the sum of $82,500, and why extrapolating that number over four years would not be anything more than speculation.  *See, e.g., Tamarin v.*

*Adam Caterers, Inc.,* 13 F.3d 51, 53 (2d Cir. 1993) (noting that plaintiff's "estimates" that "were at best undocumented, and at worst, speculative" failed to establish damages with reasonable certainty); *Harris v. Fairweather,* No. 11-CV-2152, 2012 WL 5199250, at *4 (denying claim for damages that was speculative and "not supported by any citations to authority or evidence'); *Anglo–Iberia Underwriting Management Co. v. Lodderhose,* 282 F. Supp. 2d 126, 130 (S.D.N.Y. 2003) (finding that certain damages set forth by the plaintiffs were speculative and therefore not recoverable). It appears that for some unknown reason, Munish halved the difference of Tech Matrix's expenditures caused to be incurred by Sanjay and Munish ($165,156.75 ÷ 2 = $82,500). However, Munish failed to provide any explanation or legal authority in support of this calculation. Munish's calculation of damages is still based on Tech Matrix's expenditures, which, taken alone, shed no light on the profits earned by Tech Matrix.

Accordingly, Munish has failed to provide an adequate basis for the damages sought. Therefore, the Court respectfully recommends that Munish's request for an award of $330,000 in damages for the breach of contract claim and other state law claims against Sanjay and Tech Matrix be DENIED.

### c.    Santusht

Based on the damages chart provided in Plaintiffs' submissions, it appears that Munish seeks $100,000 in damages against Santusht for his failure to distribute 50% of the profits earned from the sale of CT India's software in accordance with the 2014 Agreement.[15]  *See* Pls.' Mem.

---

[15]    Plaintiffs' damages chart states that $100,000 is sought for "lost investments in developing CT India" based on the breach of contract and conversion claims. *See* Pls.' Mem. at 10. This capital investment was made in accordance with terms of the 2014 Agreement entered into between Munish, Santusht, and Sharma. *See* Am. Compl. at ¶ 24. Since Santusht is the only named defendant who is a party to the 2014 Agreement, the Court concludes that the damages sought are by Munish against Santusht.

at 10.  The damages chart shows that these damages are sought in connection with Munish's

claims against Santusht for breach of contract and conversion.  *Id*.  Again, since Munish "seeks

recovery for the same damages under different legal theories, only a single recovery is allowed,"

and the claim will be evaluated under Munish's breach of contract theory.  *See Seift,* 61 F. Supp.

3d at 326.

Under the 2013 Agreement, Munish agreed to contribute capital in the sum of $100,000

to CT India in exchange for 50% of the profit earned from any software developed by Santusht

for CT India.  *See* Am. Compl. ¶¶ 22-24.  Santusht developed the CT Live and CT Legal

software for CT India but did not share any of the profits earned from the sale of that software.

*Id.* ¶¶ 25, 46.  Here, however, Munish concedes that he is unable to quantify the profits earned

from the sale of the software because of Defendants' default.  *See* Pls.' Mem. at 10.  Presumably

in the absence of such evidence, Munish seeks an award of $100,000 in damages representing

the capital he invested under the terms of the 2013 Agreement.  *Id*.  Although Munish fails to

categorize or articulate the legal basis for his requested damages, it is clear that he is seeking to

be put in the same position as he was prior to the execution of the 2014 Agreement.  Specifically,

Munish is seeking the return of his investment instead of the profits from the sale of the software

he would have received in accordance with the 2014 Agreement.

Under New York law, where the traditional measure of damages for breach of

contract cannot be precisely calculated, reliance or restitution damages may be an appropriate

remedy.  *See Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 98 F. Supp. 3d 600, 605 (E.D.N.Y.

2015), *aff'd*, 646 Fed. App'x 25 (2d Cir. 2016) (citation omitted).  Both reliance and restitution

damages are intended to "place plaintiffs in the same position as they were prior to the execution

of the contract[.]".  *See Summit Properties Int'l, LLC v. Ladies Prof'l Golf Ass'n*, No. 07-CV-

10407, 2010 WL 4983179, at *5 (S.D.N.Y. Dec. 6, 2010) (citing *V.S. Intern., S.A. v. Boyden World Corp.,* 862 F.Supp. 1188, 1198 (S.D.N.Y.1994).  Reliance damages "allow a plaintiff to recover [its] expenses of preparation and of part performance, as well as other foreseeable expenses incurred in reliance upon the contract."  *Summit Properties Int'l, LLC*, 2010 WL 4983179, at *5 (quoting *Bausch & Lomb Inc. v. Bressler*, 977 F. 2d 720, 729 (2d Cir. 1992)).  "Reliance damages are available only for efforts 'rendered useless' as a consequence of the breach."  *Puebla Palomo v. DeMaio*, 403 F. Supp. 3d 42, 71 (N.D.N.Y. 2019) (citing *Summit Properties Int'l, LLC*, 2010 WL 4983179, at *5 (S.D.N.Y. Dec. 6, 2010)).

Alternatively, "[u]pon a demonstration that a defendant is liable for material breach, the plaintiff may recover" "restitution" equal to "the reasonable value of services rendered, goods delivered, or property conveyed less the reasonable value of any counter-performance received by him."  *Id*.  "A material breach is one that has been defined as one that would justify the other party to suspend his own performance of the contract."  *Id.* (citing *Lanvin Inc. v. Colonia, Inc.,* 739 F. Supp. 182, 195 (S.D.N.Y. 1990)).

Here, Santusht developed the CT Live and CT Legal software for CT India utilizing the resources (*i.e.,* equipment, personnel, etc.) funded by Munish's $100,000 investment in CT India.  *See* Am. Compl. ¶¶ 22, 24-25.  Santusht thereafter sold the software, but did not distribute any of the profits to Munish (or Sharma) in accordance with the 2014 Agreement.  *Id*. ¶ 46.  Santusht has withheld the source codes for the CT Live and CT Legal software from Plaintiffs while bringing all personnel and resources funded by Munish's investment to CT, Inc.  *Id*. ¶¶ 24, 30, 32-33.  These actions constitute a material breach of the 2014 Agreement, rendering worthless Munish's investment.  Therefore, Munish is entitled to recover his $100,000 investment as either "expenses of preparation and of part performance ... incurred in reliance upon the contract" or as

"the reasonable value of…property conveyed." *See Summit Properties Int'l, LLC*, 2010 WL 4983179, at *4-5; *Puebla Palomo v. DeMaio*, 403 F. Supp. 3d at 71 (finding that defendants could recover their capital investment rendered useless by plaintiff's breach of contract through either reliance damages or restitution damages); *Intrepidus, LLC v. Bivins,* No. 15-CV-7721, 2019 WL 4911190, at *4 (S.D.N.Y. Sept. 16, 2019), *report and recommendation adopted,* No. 15-CV-7721, 2019 WL 4805761 (S.D.N.Y. Oct. 1, 2019) (recommending that plaintiff recover its capital investment rendered worthless by defendant's misappropriation and conversion because "[defendant's] default and [his] abandonment of [the] litigation … render[ed] the most appropriate remedies unprovable.")

Defendants argue that Munish is not entitled to the requested damages because he has not presented any proof of having invested $100,000 in CT India. *See* Defs.' Opp'n at 14. However, Munish's proof of damages is inextricably bound to his allegations of liability. Munish alleged in his Amended Complaint (*see* Am. Compl. ¶ 24) and signed declaration (Chadha Decl. ¶ 12) under penalty of perjury, that he invested $100,000 in CT India under the terms of the 2014 Agreement. Since this allegation is deemed admitted by virtue of Defendants' default, no additional proof is necessary. *See Amusement Indus., Inc. v. Stern*, No. 07-CV-11586, 2016 WL 7016855, at *3 (S.D.N.Y. Nov. 30, 2016), *report and recommendation adopted*, No. 07-CV-11586, 2017 WL 57851 (S.D.N.Y. Jan. 4, 2017), *aff'd,* 721 Fed. App'x 9 (2d Cir. 2018) (awarding damages and noting "[P]laintiffs alleged that they wired $13,000,000 to the escrow account and that [defendants] misappropriated the funds in that account. By its default, [defendant] admitted those allegations. Thus, additional proof of damages is arguably not even necessary.") (citation omitted).

Accordingly, the Court respectfully recommends that Munish's request for an award of $100,000 in damages against Sanjay for the breach of contract claim be GRANTED.[16]

## B.    Punitive Damages

Plaintiffs seek punitive damages in the amount of $100,000 in connection with their fraud claims against Defendants.  *See* Pls.' Mem. at 12-13.  Before punitive damages may be awarded, "New York law requires a finding of actual or nominal damages."  *Juniper Entm't, Inc. v. Calderhead*, No. 07-CV-2413, 2012 WL 1106929, at *7 (E.D.N.Y. Mar. 31, 2012) (collecting cases).  Here, the only damages sought in connection with any claim for fraud was by Munish against Sanjay for compensatory damages in the amount of $330,000 arising from the 2012 Agreement.  *See* Pls.' Mem. at 10.  However, as explained *supra*, the Court recommends against awarding compensatory damages for this claim.  Moreover, since Plaintiffs did not request nominal damages for any of its claims,[17] the Court does not recommend awarding any such damages.  Because the Court does not recommend awarding either actual or nominal damages for Plaintiffs' fraud claims, Plaintiffs are not entitled to punitive damages arising from those claims.  *See Action House, Inc. v. Koolik,* 54 F.3d 1009, 1013 (2d Cir. 1995) ("The district court's instructions on punitive damages were not consistent with New York law, which requires a finding of actual damages before punitive damages may be awarded."); *Conner v. Kira Int'l,*

---

[16]    Plaintiffs did not identify which Defendants they sought to hold jointly and severally liable, and for which claims they sought to hold them jointly and severally liable.

[17]    Even if nominal damages had been requested, it is questionable whether Plaintiffs would be entitled to such damages since the parties did not address whether Plaintiffs sufficiently demanded such damages in their Complaint.  *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *Fox v. Board of Trustees of State University of New York,* 148 F.R.D. 474, 478-82 (N.D.N.Y. 1993) (finding that nominal damages cannot be "read into the complaint" and that plaintiffs could not rely upon the request for "other reliefs as the Court deems just and proper").

*Inc.*, No. 13-CV-0417, 2015 WL 4656530, at *6 (E.D.N.Y. July 14, 2015), *report and recommendation adopted,* No. 03-CV-417, 2015 WL 4656536 (E.D.N.Y. Aug. 5, 2015) ("Punitive damages [premised on fraud] … are not available when compensatory or nominal damages are not awarded.").

Even assuming Plaintiffs were entitled to nominal or actual damages for their fraud claims, or that Plaintiffs did not limit their request for punitive damages solely to those claims, the Court nonetheless recommends against awarding punitive damages in this action.  "[I]n order to state a claim for punitive damages, a claimant must allege conduct which (1) is aimed at the public generally, (2) involves a fraud evincing a high degree of moral turpitude and (3) demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations." *Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001) (citation and internal quotation marks omitted).  Punitive damages must be proven by clear and convincing evidence.  *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 526 (S.D.N.Y. 2011).

Here, Plaintiffs have failed to allege any facts demonstrating that Defendants' conduct was aimed at the public generally.  *See Manney v. Reichert,* No. 13-CV-4413, 2014 WL 4805046, at *16 (E.D.N.Y. Sept. 26, 2014) ("A court evaluates whether a plaintiff is entitled to punitive damages for fraud related to a contract claim using the same test as for punitive damages in a contract claim. This requires, *inter alia,* that the fraudulent "conduct must be part of a pattern directed at the public.") (citation omitted).  Plaintiffs allege that Defendants committed a breach of contract and fraud only as to Plaintiffs, and make no allegation that Defendants were engaged in a larger scheme to defraud the public.  Where, as here, damages are plainly sought to "remedy private wrongs" rather than "vindicate public rights," an award of

punitive damages is not warranted. *Kruglov v. Copart of Connecticut, Inc.,* 771 F. App'x 117, 120 (2d Cir. 2019) ("[T]he purpose of punitive damages 'is not to remedy private wrongs but to vindicate public rights.' ") (citing *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994)).

Accordingly, the Court respectfully recommends that Plaintiffs' request for punitive damages in the amount of $100,000 be DENIED.

### C.      Pre-Judgment Interest

Plaintiffs seeks pre-judgment interest on the damages awarded in connection with their breach of contract claim from July 6, 2016, the date this action was commenced. *See* Pls.' Mem. at 15. "Under New York law, a plaintiff that prevails on a claim for breach of contract is entitled, as a matter of right, to prejudgment interest from the date of breach until the entry of final judgment." *Boyce v. Soundview Tech. Grp., Inc.*, No. 03-CV-2159, 2005 WL 627780, at *2 (S.D.N.Y. Mar. 17, 2005) (citing, *inter alia, U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991)); *see* N.Y. C.P.L.R. § 5001. The statutory rate of "[i]nterest shall be at the rate of nine per centum per annum." N.Y. C.P.L.R. § 5004. "Where ... damages for breach of contract are incurred at various times after the date of the breach, 'interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.'" *Danaher Corp. v. Travelers Indem. Co.*, No. 10-CV-121, 2015 WL 409525, at *8 (S.D.N.Y. Jan. 16, 2015) (quoting N.Y. C.P.L.R. § 5001(b)).

Here, Munish does not request that interest be computed from the date his damages accrued, but instead requests that interest be computed from the date this action was commenced on July 6, 2016. *See* Pls.' Mem. at 15. Accordingly, the Court respectfully recommends that Munish be awarded prejudgment interest on his award of compensatory damages at the statutory

rate of 9% per annum from July 6, 2016 through the date of entry of judgment. *See H.Daya Int'l Co. v. Arazi,* 348 F. Supp. 3d 304, 312 (S.D.N.Y. 2018) (granting plaintiff's request to apply prejudgment interest from the date the action was instituted instead of the date the damages accrued).

### D.     Post-Judgment Interest

Munish also requests and is entitled to an award of post-judgment interest on his breach of contract damages[18], which "shall be allowed on any money judgment in a civil case recovered in a district court." *See* 28 U.S.C. § 1961(a); Pls.' Mem. at 15-16. Accordingly, the Court respectfully recommends that Munish be awarded post-judgment interest on his award of compensatory damages at the statutory rate set forth in 28 U.S.C. § 1961(a) from the date of entry of judgment until the date of payment. *See Fermin v. Las Delicias Peruanas Rest.*, Inc., 93 F. Supp. 3d 19, 53 (finding that post-judgment interest is mandatory).

### E.     Attorney's Fees and Costs

Plaintiffs seek $131,701.50 in attorneys' fees and $967 in costs incurred in the prosecution of this action. *See* Pls.' Mem. at 14; Nagampalli Decl. ¶¶ 9, 10. The sole basis asserted by Plaintiffs for the recovery of attorneys' fees and costs is the Copyright Act which permits courts to award prevailing plaintiffs their fees and costs incurred in litigation. *See* Pls.'s Mem. at 14 (citing 17 U.S.C. § 505, 1203(b)(4-5). However, as explained *supra*, a foreign copyright holder is not entitled to recover either statutory damages or attorneys' fees under the

---

[18]     Pre-judgment interest is mandatory for judgments on claims over which the court exercises supplemental jurisdiction. *See Khurana v. JMP USA, Inc.,* No. 14-CV-4448, 2017 WL 1251102, at *17 (E.D.N.Y. Apr. 5, 2017) ("[A]lthough the Court has exercised supplemental jurisdiction over Plaintiff's state-law claims, any judgment awarded would, nevertheless, constitute a federal judgment. Therefore, that judgment would be governed by the plain language of 28 U.S.C. § 1961.") (citing *Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013)).

Copyright Act unless the foreign copyright has been registered in the United States. *See, e.g.,*
*The Football Ass'n*, 633 F. Supp.2d at 162 ("The holder of a foreign copyright does not need to
register before filing suit, unless he is seeking statutory damages or attorney fees."); *Super
Express USA Publ'g Corp. II*, 2018 WL 1559764, at *3 ("[U]nregistered foreign copyright
holders can bring infringement claims, but they may only seek actual damages."); *Master Sound
Int'l, Inc. v. PolyGram Latino U.S.,* No. 98-CV-8468, 1999 WL 269958, at *3 (S.D.N.Y. May 4,
1999) ("Registration is a prerequisite to bringing suit for recovery of [statutory] damages and
[attorney's] fees, and [Section 412] does not incorporate an exception for works originated in
countries outside the United States."); *Rudnicki v. WPNA 1490 AM,* 580 F. Supp. 2d 690, 694
(N.D. Ill. 2008) ("Registration is only a prerequisite when the foreign copyright holder seeks
statutory damages and attorney's fees.").  Because the Amended Complaint does not allege that
the foreign copyrights at issue are registered in the United States, Plaintiffs are not entitled to an
award of attorneys' fees and costs under the Copyright Act.

Although Plaintiffs fail to make any reference to the DTSA in support of its request for
attorneys' fees and costs, the DTSA permits courts to "award reasonable attorneys' fees to the
prevailing party" for the misappropriation of a trade secret "if the trade secret was willfully and
maliciously misappropriated."  18 U.S.C. § 1836(b)(3)(D).  Plaintiffs do not cite any legal
authority interpreting or explaining the "willful" or "malicious" requirement under the DTSA in
the context of attorneys' fees awards for trade secret misappropriation.  While Plaintiffs routinely
characterize Defendants' conduct as "willful" throughout their submissions, they do so in a

conclusory manner, without citing any factual allegations or legal authority which would support such a conclusion under the DTSA. [19]

Generally, courts in this circuit find that trademark and copyright infringement may be deemed willful by virtue of a defendant's default, without a further showing by the plaintiff. *See Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12-CV-5354, 2017 WL 10088143, at *5 (E.D.N.Y. Mar. 21, 2017). While this Court is not aware of any legal authority in this Circuit applying this same principle to the misappropriation of trade secrets under the DTSA, that does not mean that such support does not exist. Notwithstanding that fact, Plaintiffs have still failed to demonstrate, with reference to any factual allegations and/or legal authority, that the alleged misappropriation was also "malicious" – a factor essential to awarding attorneys' fees under the statute. Absent a showing that Defendants acted "maliciously," the Court cannot recommend an award of attorneys' fees under the DTSA. *See* 18 U.S.C. § 1836(b)(3)(D).

Accordingly, the Court respectfully recommends that Plaintiffs' request for attorneys' fees and costs be DENIED, without prejudice, and with leave to renew their request if they are able to make an adequate showing that they are legally entitled to such fees and costs. Plaintiffs should not interpret this decision as an open-ended third opportunity to seek damages since Plaintiffs have had ample notice from both this Court and Judge Bianco of their obligation to provide legal and evidentiary support for their damages claims and have already had two

---

[19]     Plaintiffs made no meaningful attempt to support the argument that a defendant's default may be viewed as willful misappropriation under the DTSA, but for a single citation to an inapposite case, *Jemine v. Dennis*, 901 F. Supp. 2d 365 (E.D.N.Y. 2012). *See* Pls.' Mem. at 3. The court in *Jemine* observed that a defendants' default may support a finding of willfulness in the context of the *Fair Labor Standards Act*, 29 U.S.C. § 201 *et seq.*, not the DTSA. *Jemine*, 901 F. Supp. 2d at 389.

opportunities to do so. As such, this Court respectfully recommends that any renewed request should be limited to Plaintiffs' request for attorneys' fees and costs. The Court points out that Defendants' counsel spent time arguing that the hourly rate and the number of hours expended by Plaintiffs' counsel in this action are not reasonable. *See* Defs.' Sur-Reply at 3-4. Since the request for fees has been denied at this juncture, the Court need not address these contentions at this time.

### F.      Injunctive Relief

Plaintiffs also seek a permanent injunction, pursuant to the Copyright Act and DTSA, enjoining Defendants from engaging in any future infringement and use of Plaintiffs' copyrights and trade secrets. *See* Pls.' Mem. at 8-9. "A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Kingvision Pay–Per–View Ltd. v. Lalaleo,* 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006) (citation and internal quotation marks omitted). As to the first requirement, both the Copyright Act and DTSA entitle Plaintiffs to injunctive relief. The Copyright Act authorizes the court to "grant ... final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Similarly, the DTSA authorizes the court to "grant an injunction ... to prevent any actual or threatened misappropriation ... on such terms as the court deems reasonable." 18 U.S.C. § 1836(b)(3)(A). As to the second requirement, Plaintiffs must demonstrate: "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

31

permanent injunction." *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). Each of these factors militate in favor of issuing a permanent injunction against the Defendants' conduct here.

First, Plaintiffs have demonstrated that they have suffered an irreparable injury. "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure." *EMI Apr. Music Inc. v. 4MM Games, LLC*, No. 12-CV-2080, 2014 WL 325933, at *9 (S.D.N.Y. Jan. 13, 2014), *report and recommendation adopted*, No. 12-CV-2080, 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014) (citing *Salinger v. Colting*, 607 F. 3d 68, 81 (2d Cir. 2010). Irreparable harm may also be established by the "threat of continuing violations." *See Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721, 2019 WL 312149, at *9 (E.D.N.Y. Jan. 3, 2019), *report and recommendation adopted*, No. 17-CV-05721, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019) ("[T]he 'threat of continuing violations' establishes the necessary irreparable harm.") (citing *Ideavillage Prod. Corp. v. Bling Boutique Store*, No. 16-CV-9039, 2018 WL 3559085, at *5 (S.D.N.Y. July 24, 2018)). Defendants' default and failure to defend this action not only makes actual damages extremely difficult to measure, but also creates a threat that they will continue to infringe on and use Plaintiffs' copyrights and trade secrets without any future redress available to Plaintiffs. *See Ideavillage Prod. Corp.*, 2018 WL 3559085, at *5 ("Defaulting Defendants' refusal to defend this action creates a threat that they will continue to infringe … unless permanently enjoined from doing so"); *Mint, Inc. v. Amad*, No. 10-CV-9395, 2011 WL 1792570, at *3 (S.D.N.Y. May 9, 2011) (holding that irreparable injury existed in part because "determining the amount of damages from [the] infringing conduct [would be] especially difficult, if not impossible"). Where, as here, a defendant may continue to distribute and use a plaintiff's product, preventing the plaintiff from controlling the distribution

of its products and recovering any damages, irreparable harm exists. *See, e.g. McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 499–500 (S.D.N.Y. 2018) (finding irreparable harm where "[i]n the absence of a permanent injunction, defendants may continue to distribute unauthorized copies of plaintiffs' [products], thus preventing plaintiffs from controlling the distribution of their products and recovering associated profits."); *Howarth v. FORM BIB, LLC*, No. 18-CV-7047, 2019 WL 1986594, at *2 (S.D.N.Y. May 6, 2019) (same) (citation omitted); *EMI Apr. Music Inc.*, 2014 WL 325933, at *9 ("[Plaintiff] has successfully established its irreparable harm on the following bases: [] its actual damages are extremely difficult to measure; … and [plaintiff] has no control over [defendants'] illegal use of the copyrighted songs because [defendant] has refused to properly license the sound recordings.").

Second, Plaintiffs have demonstrated that there are no adequate remedies available at law to compensate them for their injuries. "Monetary damages [are] inadequate where the defendant poses a significant threat of future infringement." *See Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016) (citation omitted). Where, as here, "default is entered, a court may infer from a defendant's default that it is willing to, or may continue its infringement." *Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11-CV-5980, 2013 WL 5977440, at *11 (S.D.N.Y. Nov. 12, 2013), *report and recommendation adopted,* No. 11-CV-5980, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014) (citing *Pearson Educ., Inc. v. Vergara,* No. 09-CV-6832, 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010)). Given the threat of future infringement, Plaintiffs cannot be compensated by monetary relief alone.

Third, the balance of hardships tips in Plaintiffs' favor where Defendants have not identified any hardship imposed by the issuance of a permanent injunction. *See, e.g. Wealth Mgmt. Assocs. LLC v. Farrad*, No. 17-CV-1924, 2019 WL 5725044, at *7 (S.D.N.Y. June 21,

2019), *report and recommendation adopted,* No. 17-CV-1924 , 2019 WL 6497424 (S.D.N.Y.

Dec. 3, 2019) (finding balance of hardships weighs in favor of plaintiff where defaulting

defendant failed to identify any hardships); *Pearson Educ., Inc.*, 2010 WL 3744033 at

*5 (finding balance of hardships weighs in favor of plaintiff where defaulting defendant failed to

identify any hardships). Rather than present any "hardship" the Defendants would experience if

the injunction were granted, Defendants' counsel asserts that the Defendant companies are

defunct and the individual Defendants "are not involved in any business that concerns or relates

in any way to the matters in which they were previously engaged that are or were in issue in this

action." Defs.' Opp'n at 15. Significantly, Defendants have presented no documentation nor

any sworn affidavits from the Individual Defendants that such is the case. Further, "it is

axiomatic that an infringer ... cannot complain about the loss of ability to offer its infringing

product." *Rovio Entm't, Ltd. v. Allstar Vending, Inc*., 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015).

Fourth and finally, the Court finds that the public interest would not be disserved by the

issuance of an injunction. "[T]he public has a compelling interest in protecting copyright

owners' marketable rights to their work and the economic incentive to continue creating ...

creative work." *WowWee Grp. Ltd. v. Haoqin,* No. 17-CV-9893, 2019 WL 1316106, at *6

(S.D.N.Y. Mar. 22, 2019) (quoting *WPIX, Inc. v. ivi, Inc*., 691 F.3d 275, 287 (2d Cir. 2012)).

There is also "a substantial public interest in the protection of trade secrets and proprietary

information as well as the enforceability of contracts." *Aventri, Inc. v. Tenholder*, No. 18-CV-

2071, 2018 WL 7348013, at *1 (D. Conn. Dec. 18, 2018).

For the foregoing reasons, the Court respectfully recommends that a permanent

injunction be entered against all Defendants enjoining them from (1) misappropriating Plaintiffs'

trade secrets, (2) infringing Plaintiffs' copyrighted source code, (3) marketing or selling CT Live,

34

CT Legal and any other products developed by CT India, including those CT India developed products which are masked with a different superficial name.  *See* Pls.' Mem. at 9.

## V.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Vitaliano that Plaintiffs' motion be GRANTED, in part, and DENIED, in part.  The Court respectfully recommends that:

1.    Plaintiff CT India's request for statutory damages in the amount of $150,000 against Sanjay, Santusht, and CT, Inc. for copyright infringement be DENIED;

2.    Plaintiffs' request for statutory damages in the amount of $150,00 against Defendants for their violation of the DTSA be DENIED;

3.    Plaintiffs' request for an award of $125,000 in compensatory damages against Defendants for their purported breach of the 2015 Settlement Agreement be DENIED;

4.    Plaintiff Munish's request for an award of $330,000 in damages for the breach of contract claim and other state law claims against Sanjay and Tech Matrix be DENIED;

5.    Plaintiffs' request for punitive damages in the amount of $100,000 against Defendants be DENIED;

6.    Plaintiff Munish's request for an award of $100,000 in damages for the breach of contract claim against Sanjay be GRANTED;

7.    Plaintiff Munish's request for prejudgment interest at the statutory rate of 9% per annum from July 6, 2016 through the date of entry of judgment be GRANTED;

8.    Plaintiff Munish's request for post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961(a) from the date of entry of judgment until the date of payment be GRANTED;

9.    Plaintiffs' request for attorneys' fees and costs be DENIED with leave to renew consistent with the directives set forth in this Report and Recommendation; and

10.    Plaintiffs' request for a permanent injunction enjoining Defendants from infringing on or using their copyrights or trade secrets be GRANTED, consistent with the language set forth in Section IV(F) of this Report and Recommendation.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from entry of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Eric N. Vitaliano.  Any requests for an extension of time for filing objections must be directed to Judge Vitaliano prior to the expiration of the 14-day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *See, e.g.*, *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED:**

Dated:  Central Islip, New York
        February 28, 2020

                              /s/ A. Kathleen Tomlinson
                              A.  KATHLEEN TOMLINSON
                              United States Magistrate Judge